IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAHEED JENKINS, | No. 4:25-CV-01680 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**JANUARY 8, 2026**

Plaintiff Waheed Jenkins filed the instant *pro se* Section 1983[1] lawsuit, alleging constitutional violations by officials at the State Correctional Institution in Coal Township, Pennsylvania (SCI Coal Township). Because Jenkins fails to state a claim upon which relief may be granted, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

**I.    BACKGROUND**

During the events that underlie the instant lawsuit, Jenkins was incarcerated at SCI Coal Township. It appears that after filing his complaint, Jenkins was released from prison and moved to Bear, Delaware.[2]

---

[1]   42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   *See* Doc. 8.

According to Jenkins, on July 25, 2025, he fell asleep on the top bunk in his cell and then rolled off, falling onto the floor.[3] Although not clearly alleged, it appears that Jenkins hit his head during the fall, as he indicates that he did not know "what happened" and claims that he injured his "head and back."[4] According to Jenkins, Nurse Kevin Hall responded to the incident and administered Narcan, apparently believing that Jenkins was suffering from a heroin overdose.[5]

Jenkins was transferred to the infirmary and then to the Restricted Housing Unit (RHU), as he was facing a disciplinary investigation based on prison officials' belief that he had ingested narcotics.[6] Jenkins alleges that he spent 15 days in the RHU during the investigation and was not released until his toxicology lab results came back negative.[7] He further recounts that, on August 9, 2025, he had a visitor while he was being held in the RHU, and corrections officer "Je. Shearn" informed the visitor that Jenkins was being held in the RHU "for drugs."[8]

Jenkins lodged the instant Section 1983 complaint in this Court in September 2025.[9] He sues four defendants: the Pennsylvania Department of

---

[3] Doc. 1 at 5.
[4] *Id.*
[5] *Id.* at 4, 5.
[6] *Id.*
[7] *Id.* at 5.
[8] *Id.*
[9] *See generally* Doc. 1.

Corrections (DOC), Nurse Hall, Corrections Officer Shearn, and Superintendent Thomas McGinley.[10]

It is difficult to discern what types of Section 1983 claims Jenkins is raising. As best as the Court can tell, he appears to be asserting an Eighth Amendment claim of deliberate indifference to serious medical needs and an Eighth Amendment "failure-to-protect" claim.[11] It is possible that Jenkins is also attempting to assert a Fourteenth Amendment procedural due process claim.[12] It is unclear which Defendant or Defendants are targeted by each claim. Jenkins seeks compensatory and punitive damages against all Defendants.[13]

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[14] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[15] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to

---

[10]   *Id.* at 2-3.
[11]   *See id.* at 4, 5.
[12]   *See id.* at 3, 6, 7.
[13]   *Id.* at 5.
[14]   *See* 28 U.S.C. § 1915A(a).
[15]   *Id.* § 1915A(b)(1).

screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[16]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[17] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[18] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[19]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[20] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[21] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal

---

[16] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[17] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[18] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[19] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[20] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[21] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[22]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[23] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[24]

Because Jenkins proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[25]

## III. DISCUSSION

Upon review of Jenkin's complaint, he fails to state a Section 1983 claim upon which relief may be granted.  The Court will address his pleading deficiencies in turn.

### A.  Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[26]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[27]  Personal involvement can include direct

---

[22] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[23] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[24] *Iqbal*, 556 U.S. at 681.
[25] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[26] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[27] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[28] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[29]

Jenkins appears to assert an Eighth Amendment failure-to-protect claim against Superintendent McGinley. He does not, however, plausibly allege how Superintendent McGinley was personally involved in the allegedly deficient medical care or the disciplinary process. Jenkins offers one sentence with respect to Superintendent McGinley's conduct, alleging that he "failed to protect" Jenkins "by not enforcing the policies of this prison from the wrong [of] the initial nurse."[30] This assertion is a classic example of *respondeat superior* (that is, vicarious liability), which does not apply to Section 1983 claims. It is also a legal conclusion that is not entitled to the assumption of truth and may be disregarded.[31]

---

[28] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[29] *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").
[30] Doc. 1 at 4.
[31] *See Connelly*, 809 F.3d at 787.

To plausibly plead a Section 1983 claim, Jenkins must specify each Defendant's personal involvement in the alleged constitutional misconduct in order to state a claim against them.  Jenkins does not do so for Superintendent McGinley. Accordingly, the Court must dismiss the Section 1983 claim against Superintendent McGinley under 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B.   Claim(s) Against the DOC

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law."[32]  Only "persons" are subject to suit under Section 1983, and entities such as state agencies, prisons, medical departments, or private medical companies generally do not qualify as "persons" for purposes of Section 1983.[33]

---

[32] *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (emphasis added) (citing *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)).

[33] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-65, 71 (1989) (explaining that a state is not a "person" for Section 1983 purposes); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (holding that "New Jersey Prison Medical Department" was a state agency and not a "person" under Section 1983); *Slagle v. County of Clarion*, 435 F.3d 262, 264 n.3 (3d Cir. 2006) (affirming on other grounds and observing that district court properly "dismissed Clarion County Jail as a defendant in this case," quoting district court's reasoning that "'it is well established in the Third Circuit that a prison is not a "person" subject to suit under federal civil rights laws'"); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 554 (M.D. Pa. 2007) (finding that PrimeCare Medical is not a "person for purposes of Section 1983" and thus not subject to liability under that statute); *Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (nonprecedential) (dismissing Section 1983 claims against prison and Department of Corrections because they "are not persons subject to suit under" Section 1983).

Jenkins, therefore, cannot sue the DOC under Section 1983 because the DOC is not a "person" subject to Section 1983 liability.[34] Additionally, any claim against a state agency is akin to suing the state itself, and such claims are generally barred by Eleventh Amendment sovereign immunity.[35] Accordingly, any Section 1983 claim for damages against the DOC will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### C. Eighth Amendment Medical Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[36] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[37] A serious medical need is "one that has been diagnosed by a physician as requiring treatment

---

[34] *See Fischer*, 474 F.2d at 992; *Foye*, 675 F. App'x at 215.
[35] *See Harper v. Jeffries*, 808 F.2d 281, 284 n.4 (3d Cir. 1986) (noting that any Section 1983 action by prisoner against Pennsylvania Parole Board is barred by Eleventh Amendment); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) ("The eleventh amendment's bar [against civil rights suits in federal court targeting a state] extends to suits against departments or agencies of the state having no existence apart from the state."); *Foye*, 675 F. App'x at 215.
[36] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[37] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

8

or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[38]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[39] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[40] Claims sounding in mere medical negligence will not suffice.[41]

Assuming Jenkins has stated a serious medical need with respect to his fall-related injuries, his medical indifference claim fails at the second and third elements. That is, he has not plausibly alleged facts that would show that Nurse Hall was deliberately indifferent to his serious medical needs or that such deliberate indifference caused Jenkins harm.

The gravamen of the instant complaint is that Nurse Hall believed that Jenkins' symptoms were related to a heroin overdose (rather than a head injury), so he administered Narcan to Jenkins to treat the apparent overdose. This type of

---

[38] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[39] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[40] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[41] *Rouse*, 182 F.3d at 197.

allegation is a quintessential medical negligence claim. Jenkins essentially contends that Nurse Hall should have provided different treatment on the day in question than the care he provided. While this contention may implicate professional negligence, it does not come close to establishing deliberate indifference on the part of Nurse Hall and therefore does not rise to the level of a constitutional violation.[42]

Furthermore, Jenkins does not allege that Nurse Hall's purportedly negligent treatment on July 25 caused him harm. It is well established, however, that inmates claiming that they received constitutionally deficient medical care must show that they were physically harmed by the state actor's deliberate indifference.[43] Jenkins' complaint does not contain any such allegation of harm or

---

[42] *See Rouse*, 182 F.3d at 197.
[43] *See Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (explaining that prisoner's claim could not survive Rule 56 challenge because "he presented no evidence of any harm resulting from a delay in medical treatment") (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *Joh v. Suhey*, 709 F. App'x 729, 731 (3d Cir. 2017) (nonprecedential) (finding that brief delay in treatment did not demonstrate that medical provider disregarded "an excessive risk" to inmate's safety because inmate did not allege that "the delay in treatment led to any serious harm"); *see also DeJesus v. Delaware*, 833 F. App'x 936, 940 (3d Cir. 2020) (noting that deliberate indifference to serious medical need must have caused "harm or physical injury" to plaintiff); *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) ("Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm," which can include the "pain suffered during the delay itself") (citation omitted)); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); *Kellum v. Mares*, 657 F. App'x 763, 771 (10th Cir. 2016).

injury caused by Nurse Hall, so the Eighth Amendment claim against him must be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).[44]

### D.    Official Capacity Claims

Jenkins, perhaps unintentionally, sues all Defendants in their official capacities.[45]  However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[46]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[47]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[48]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting

---

[44] Any Eighth Amendment medical indifference claim leveled against Superintendent McGinley must also be dismissed under Section 1915A(b)(1).  Jenkins fails to plead any element of a medical indifference claim with respect to McGinley, as his single allegation against McGinley is a legal conclusion that attempts to invoke vicarious liability for Nurse Hall's treatment.

[45] *See* Doc. 1 at 2-3.

[46] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[47] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[48] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[49]

Jenkins seeks only money damages as relief. To the extent these damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity. Thus, Jenkins' official capacity claims must be dismissed as well.

### E. Fourteenth Amendment Procedural Due Process Claim

It is possible that Jenkins is asserting a Fourteenth Amendment procedural due process claim regarding his 15-day detention in the RHU while prison officials waited for his toxicology results. If so, that claim fails as well.

To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[50] If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end.[51]

---

[49] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).
[50] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).
[51] *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hill*, 455 F.3d at 234-35.

Jenkins' due process claim is fatally flawed because he cannot identify a protected interest that is at stake. The Supreme Court of the United States has held that disciplinary segregation alone—under conditions that mirror those "imposed upon inmates in administrative segregation and protective custody"—generally does not reflect an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment.[52] And the United States Court of Appeals for the Third Circuit has repeatedly held that disciplinary segregation for periods much longer than that which Jenkins experienced does not rise to the level of an atypical and significant hardship.[53] Therefore, because Jenkins has not identified a protected liberty interest that is at stake for his Fourteenth Amendment procedural due process claim, the analysis is at an end and this claim must be dismissed.

### F. Claim Against Corrections Officer Shearn

Jenkins also names corrections officer "Je. Shearn" as a defendant in this action. The only allegation against Shearn is that he informed a visitor that Jenkins was "in the R.H.U. for drugs."[54] It is entirely unclear how this allegation

---

[52] *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995).
[53] *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months); *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); *Griffin v. Vaughn*, 112 F.3d 703, 705-07 (3d Cir. 1997) (fifteen months); *Dunbar v. Barone*, 487 F. App'x 721, 725 (540 days).
[54] Doc. 1 at 5.

implicates constitutional misconduct or a violation of federal law.  Jenkins does not plead what amendment or federal right Shearn purportedly infringed, nor how this single act by Shearn could violate federal law.  Accordingly, any Section 1983 claim against Shearn will be dismissed for failure to state a claim upon which relief may be granted.

### G. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[55]  Jenkins will be granted limited leave to amend in the event that he can plead facts that would plausibly state a Section 1983 claim.

Several claims, however, will be dismissed with prejudice.  Jenkins' Fourteenth Amendment procedural due process claim will be dismissed with prejudice because that claim is legally—rather than factually—deficient.  Jenkins has not, and cannot, identify a protected liberty interest such that he could assert a procedural due process claim.  The Court will also dismiss with prejudice any Section 1983 claim against Corrections Officer Shearn, as notifying a visitor that an inmate is in disciplinary custody for illicit drug use is not a violation of federal law.  All official capacity claims for money damages will be dismissed with

---

[55] *Grayson*, 293 F.3d at 114.

prejudice, as they are barred by Eleventh Amendment sovereign immunity. Finally, any Section 1983 claim against the DOC will be dismissed with prejudice, as that entity is not a "person" for purposes of Section 1983. Granting leave to amend these claims would be futile, as the substance of the claims does not rise to the level of a constitutional violation.

If Jenkins chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his Eighth Amendment claim or claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Jenkins must leave one-inch margins on all four sides of his pleading.[56] Any exhibits or documents he wishes to present should be attached to his amended complaint. Jenkins *may not* include claims that have been dismissed with prejudice. He must name proper defendants and specify the offending actions taken by a particular defendant. He must also sign the amended complaint and indicate the nature of the relief sought.

If Jenkins does not timely file an amended complaint, dismissal of any Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

---

[56] *See* LOCAL RULE OF COURT 5.1.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Jenkins' complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted. Jenkins may file an amended complaint in accordance with this Memorandum. If no amended complaint is timely filed, dismissal without prejudice will automatically convert to dismissal with prejudice and the Court will close this case. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
